UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                              |   |                              |
|------------------------------|---|------------------------------|
| JAMES F. JOHNSON,            | ) |                              |
|                              | ) |                              |
| Plaintiff,                   | ) |                              |
|                              | ) |                              |
| v.                           | ) | Civil Action No. 05-2315 (RBW) |
|                              | ) |                              |
| ANTHONY WILLIAMS, *et al.*,  | ) |                              |
|                              | ) |                              |
| Defendants.                  | ) |                              |

**MEMORANDUM OPINION**

This matter is before the Court on a motion to dismiss or, in the alternative, for summary judgment, filed on behalf of Paul Quander, Paul Brennan, Anthony Hinton, and John Taberski.[1] For the reasons discussed below, the defendants' motion will be granted, and this civil action will be dismissed in its entirety.

I.    BACKGROUND

In November 1976, the plaintiff was sentenced in the Superior Court of the District of Columbia to an aggregate term of six to 30 years incarceration for burglary while armed, rape while armed, assault with a dangerous weapon, and carrying a pistol without a license. United States Parole Commission's Opposition to Petitioner's Petition for a Writ of Habeas Corpus, *Johnson v. Harrison*, No. 05cv2504 (D.D.C. filed April 3, 2006) (Ex. G (June 16, 2005 Alleged

---

[1] Anthony Williams, former Mayor of the District of Columbia, has been dismissed as a party defendant. *See Johnson v. Williams*, No. 05-2315 (RBW) (D.D.C. Sept. 26, 2006) (Memorandum Opinion and Order).

1

Violation(s) Report) at 1).[2] Apparently the plaintiff had been released on parole for the 1976 conviction, and while on parole committed new offenses that resulted in the imposition of a prison sentence in February 1997 of 40 months to 10 years for carrying a pistol without a license, and one year for possessing an unregistered firearm. *Id.*

The United States Parole Commission ("USPC") released the plaintiff on parole from his 1997 sentence on October 10, 2003. Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment ("Defs.' Mem."), Declaration of Paul S. Brennan ("Brennan Decl."), Ex. 4 (Certificate of Parole) at 1.[3] The Court Services and Offender Supervision Agency ("CSOSA") was responsible for supervising the plaintiff's parole and for carrying out the conditions of release imposed by the USPC. *See* D.C. Code § 24-133(c)(4) (2001). John Taberski ("Taberski") initially was assigned as the plaintiff's community supervision officer ("CSO"), and when their relationship soured, Anthony Hinton ("Hinton") was assigned to supervise the plaintiff. Defs.' Mem. at 4; Complaint ("Compl.") ¶ 8. Paul Brennan, a Supervisory CSO, supervised both CSO Taberski and CSO Hinton. Defs.' Mem. at 4; *see id.*, Brennan Decl. ¶ 2.

Among the conditions of the plaintiff's parole were the following:

> 4. You shall make a complete and truthful written report (on a form provided for that purpose) to your [CSO] between the first and third day of each month, and on the final day of parole. You shall also

---

[2] The Court takes judicial notice of the papers filed in *Johnson v. Harrison*, No. 05cv2504 (D.D.C. filed April 3, 2006). *See, e.g., Rimkus v. Islamic Republic of Iran*, 575 F. Supp. 2d 181, 194 (D.D.C. 2008) (taking judicial notice of findings made in two prior cases before the same court); *Does I through III v. District of Columbia*, 238 F. Supp. 2d 212, 216-17 (D.D.C. 2002).

[3] Exhibits 1-3, 5, and 8 to the Brennan Declaration have been filed under seal.

2

> report to your [CSO] at other times as your [CSO] directs, providing complete and truthful information.
>
> 5. You shall not violate any law. You shall not associate with persons engaged in criminal activity. You shall get in touch within 2 days with your [CSO if you are] arrested or questioned by a law enforcement officer.
>
> 6. You shall not associate with persons who have a criminal record without the permission of your [CSO].
>
> 14. You shall cooperate fully with those responsible for your supervision. You shall carry out the instructions of your [CSO] and report as directed, knowing that failure to do so may be sufficient to cause your return to the institution.
>
> 16. If you have been convicted of any sexual offense, . . . you must report for registration with your state (including the District of Columbia) sex offender registration agency as directed by your [CSO].

United States Parole Commission's Opposition to Petitioner's Petition for a Writ of Habeas Corpus, *Johnson v. Harrison*, No. 05cv2504 (D.D.C. filed April 3, 2006) (Ex. D (Certificate of Parole) at 3-4).

### *A. The Plaintiff's Status as a Sex Offender*

Since April 2003, the plaintiff has been registered in the District of Columbia as a sex offender. Defs.' Mem., Brennan Decl., Ex. 2 (Sex Offender Registry Information). In May 2003, CSO Taberski ordered the plaintiff to undergo a psychosexual assessment by Dr. Michael Lavin. *See* Compl. ¶¶ 1-2; Defs.' Mem., Brennan Decl., Ex. 3 (Psychosexual Evaluation of James Johnson). Dr. Lavin placed the plaintiff "in the medium-high risk category of sexual offenders, based on [an] assessment . . . completed on February 24, 2004," United States Parole Commission's Opposition to Petitioner's Petition for a Writ of Habeas Corpus, *Johnson v.*

*Harrison*, No. 05cv2504 (D.D.C. filed April 3, 2006) (Ex. E (Request for Modification(s) of Release Conditions) at 1), and recommended that the plaintiff undergo sex offender treatment, *see* Defs.' Mem., Brennan Decl., Ex. 5 (James Johnson Treatment Recommendation). In making his assessment, Dr. Lavin considered the results of polygraph and plethysmograph tests, as well as information from CSO Taberski regarding the plaintiff's plans to have his teenage daughter spend weekends with him at his residence. *Id*., Ex. 5 at 1. Based on Dr. Lavin's recommendation and "other . . . behavior on the [plaintiff's] part that suggest[ed] that he present[ed] [a] grave threat to the community, namely minors," United States Parole Commission's Opposition to Petitioner's Petition for a Writ of Habeas Corpus, *Johnson v. Harrison*, No. 05cv2504 (D.D.C. filed April 3, 2006) (Ex. E at 1), the USPC imposed the following additional conditions on the plaintiff's parole:

> You shall not have any association or contact of any kind with minor children, whether in your residence, employment, social, or other activities, without the approval of your [CSO].
>
> In addition, you shall be subject to the Special Sex Offender Aftercare Condition. You shall participate in an in-patient or out-patient mental health program as directed by your [CSO], with special emphasis on long-term sex offender testing and treatment. You are expected to acknowledge your need for treatment and to participate in good faith in achieving the program goals that will be established for you.
>
> Special Search Condition to allow CSOSA to conduct searches of your person, property and abode, at a reasonable time and manner by your CSO, in order to determine if you continue to have contact with minor[s] or possess items used to groom minors.

Defs.' Mem., Brennan Decl., Ex. 6 (March 1, 2004 Notice of Action). Notwithstanding these conditions, the plaintiff continued to have contact with minors, including his teenage daughter. *See id*., Ex. 5 at 5-8; United States Parole Commission's Opposition to Petitioner's Petition for a

Writ of Habeas Corpus, *Johnson v. Harrison*, No. 05cv2504 (D.D.C. filed April 3, 2006) (Ex. L (September 13, 2005 Supplement to Warrant Application) at 1).

### B. The Plaintiff's Association with Persons Who Have Criminal Records

The plaintiff had become a certified drug addiction counselor and a Criminal Justice Act ("CJA") investigator. Compl. ¶ 4. On April 15, 2005, CSO Brennan encountered the plaintiff at the Superior Court, and observed that the plaintiff was wearing a badge indicating his status as a CJA Investigator. Defs.' Mem., Brennan Decl., Ex. 1 (Alleged Violation(s) Report, June 16, 2005) at 9; *see* United States Parole Commission's Opposition to Petitioner's Petition for a Writ of Habeas Corpus, *Johnson v. Harrison*, No. 05cv2504 (D.D.C. filed April 3, 2006) (Ex. G at 9). After learning from the Deputy Chief of the District of Columbia Public Defender Service's Investigations Division that the plaintiff should not have been issued an investigator's badge due to his criminal background, CSO Hinton confiscated the badge. Defs.' Mem., Brennan Decl., Ex. 1 at 9. A search of the plaintiff's residence on April 29, 2005, uncovered Superior Court witness vouchers and evidence "suggesting that the [plaintiff was] associating with persons who have criminal records and performed work as an investigator[.]" *Id.* In addition, CSO Hinton obtained documents from the District of Columbia Jail which confirmed that the plaintiff had visited inmates both in his capacity as a CJA Investigator and in his personal capacity, notwithstanding the Warden's February 5, 2004 memorandum instructing staff to bar the plaintiff's entry. *Id.* From this information, CSO Hinton determined that the plaintiff had violated the condition of parole that he not associate with persons who have criminal records. *Id.*

### C. The Plaintiff's May 18, 2005, Arrest

The plaintiff was arrested on May 18, 2005, and charged with operating a motor vehicle

after suspension of his driver's license. *Id.*, Ex. 1 at 10. The plaintiff failed to report his arrest to his CSO, and only admitted the arrest when "he was confronted about it on 6/8/05, despite having reported to [his CSO] on 5/18/05 and 5/24/05[.]" *Id.*

### D. Parole Revocation

A USPC hearing examiner conducted a parole revocation hearing on November 28, 2005, and he found that the plaintiff violated the conditions of his release (1) by associating with persons having a criminal record and (2) by violating the special condition of his release not to associate or have contact with any minor as a result of having contacted his minor daughter without his CSO's permission. United States Parole Commission's Opposition to Petitioner's Petition for a Writ of Habeas Corpus, *Johnson v. Harrison*, No. 05cv2504 (D.D.C. filed April 3, 2000) (Ex. M (November 28, 2005 Hearing Summary) at 3-4). Consequently, the USPC revoked the plaintiff's parole and continued the matter until December 16, 2006, his presumptive re-parole date after serving 16 months incarceration.[4] Defs.' Mem., Brennan Decl., Ex. 7 (January 5, 2006 Notice of Action) at 1.

### E. Allegations of the Plaintiff's Complaint

Generally, the plaintiff alleges that the defendants abused their authority by ordering his assessment and treatment as a sex offender, notwithstanding the number of years since the rape conviction, and by limiting his contact with his daughter. *See* Compl. ¶¶ 3, 7-9, 12. He brings this action against CSOs Brennan, Taberski and Hinton in both their official capacities and

---

[4] According to the Federal Bureau of Prisons' Inmate Locator (http://www.bop.gov/iloc2/LocateInmate.jsp), the plaintiff was released from custody on October 15, 2007. The discrepancy between the presumptive re-parole date and the date of his release from the Bureau of Prisons is not explained in the record.

individual capacities under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and under 42 U.S.C. §§ 1983 and 1985 (2000), for alleged violations of his rights protected under unspecified provisions of the United States Constitution.[5] *See id.* at 3-4. The plaintiff demands compensatory and punitive damages. *Id.* at 10.

## II. DISCUSSION

### A. The Plaintiff's Claims Against the Defendants in their Official Capacities Are Barred Under the Doctrine of Sovereign Immunity

#### 1. Dismissal Under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction

The defendants move to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure on the ground that this Court lacks subject matter jurisdiction over the plaintiff's claims against CSOs Brennan, Taberski and Hinton in their official capacities. *See* Defs.' Mem. at 10-12. Specifically, the defendants argue that the doctrine of sovereign immunity bars the plaintiff's claims. *See id.*

It is the plaintiff's burden to establish that the Court has subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In deciding whether dismissal for lack of jurisdiction is warranted, the Court must accept all factual allegations in the complaint as true, and must give the plaintiff the benefit of all reasonable inferences from the facts alleged. *Jerome*

---

[5] The Court summarily dismisses the plaintiff's claims under 18 U.S.C. §§ 241 and 242 (2000), as there is no private right of action under these criminal statutes. *See Keyter v. Bush*, No. 04-5324, 2005 WL 375623, at *1 (D.C. Cir. Feb 16, 2005) (per curiam) (affirming dismissal of claims filed "pursuant to 18 U.S.C. §§ 4, 241, and 242, because, as criminal statutes, these statutes do not convey a private right of action"), *cert. denied*, 546 U.S. 875 (2005); *Rockefeller v. U.S. Court of Appeals Office for Tenth Circuit Judges*, 248 F. Supp. 2d 17, 23 (D.D.C. 2003) (dismissing claims brought pursuant to 18 U.S.C. §§ 242, 371 "because, as criminal statutes, they do not convey a private right of action"); *see also Hunter v. District of Columbia*, 384 F. Supp. 2d 257, 260 n.1 (D.D.C. 2005) (rejecting *pro se* plaintiff's assertion of subject matter jurisdiction based on criminal statutes).

*Stevens Pharm. Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005). However, the Court may consider materials outside the pleadings for this purpose. *See id.*

### 2. Sovereign Immunity Bars the Plaintiff's Claims Against the Defendants In Their Official Capacities

In pertinent part, 42 U.S.C. § 1983 (2006) provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects ... any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

*Id*. In order to state a claim under § 1983 for a violation of a constitutional right, a complaint must allege facts sufficient to support a reasonable inference that "(1) a person (2) acting under color of state[, territorial, or District of Columbia law] (3) subjected the plaintiff or caused the plaintiff to be subjected (4) to the deprivation of a right secured by the Constitution or laws of the United States." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 829 (1985). A civil action under *Bivens* "is the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983." *Marshall v. Fed. Bureau of Prisons*, 518 F. Supp. 2d 190, 193 (D.D.C. 2007) (quoting *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006) (internal citation omitted)).

A suit against a government official in his official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent," and "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citations omitted). Accordingly, the plaintiff's claims against Quander and CSOs Brennan, Taberski and Hinton in their official

capacities are treated as if they were brought against CSOSA directly.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Such consent may not be implied, but must be "unequivocally expressed." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992). The doctrine of sovereign immunity, then, bars suits against the United States unless immunity specifically is waived by statute. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). It follows that any claims for damages against government officials in their official capacities are barred by the doctrine of sovereign immunity unless either the government specifically waives the immunity, or the government agents' actions fall within an exception to the immunity doctrine. *See Clark v. Library of Cong.*, 750 F.2d 89, 103-04 (D.C. Cir. 1984) (holding that the doctrine of sovereign immunity barred a claim for money damages against the Librarian of Congress in his official capacity because immunity had not been waived and the exceptions to immunity did not apply).

Notwithstanding CSOSA's authority to "provide supervision . . . for offenders on probation, parole, and supervised release pursuant to the District of Columbia Official Code," D.C. Code § 24-133(c)(1) (2001), CSOSA is a federal government entity. D.C. Code § 24-133(a) (2001) (establishing CSOSA "within the executive branch of the Federal Government"); *see Epps v. U.S. Attorney General*, 575 F. Supp. 2d 232, 234 n.1 (D.D.C. 2008) (noting that CSOSA is a federal agency); *see also Ali v. D.C. Court Servs. and Offender Supervision Agency*, 538 F. Supp. 2d 157, 161 (D.D.C. 2008) (concluding that sovereign immunity barred a suit against CSOSA and its employees in their official capacities and dismissing the complaint brought by a parolee as to the individual defendants, including a CSO and her supervisor).

9

Because the suit against the defendants in their official capacities is treated as if it were brought against CSOSA directly, and because CSOSA is a federal government agency, § 1983 does not apply and cannot be a basis for this Court's jurisdiction. Moreover, absent a showing by the plaintiff that sovereign immunity has been waived, the Court concludes that sovereign immunity bars the plaintiff's claims for damages against these defendants in their official capacities.

### B. The Complaint Fails to State Claims Upon Which Relief Can Be Granted Against the Defendants in their Individual Capacities

#### 1. Dismissal Under Rule 12(b)(6)

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A motion under Rule 12(b)(6) does not test a plaintiff's likelihood of success on the merits; rather, it tests whether a plaintiff properly has stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) (other citations omitted). Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a plaintiff must offer "more than labels and conclusions" to provide "grounds" of "entitle[ment] to relief." *Twombly*, 550 U.S. at 555. Or as the Supreme Court more recently stated, "[t]o survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, __ U.S. __, __, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). A complaint alleging facts which are "'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (brackets omitted).

### 2. The Defendants Are Protected By Qualified Immunity

The defendants argue that absolute judicial immunity protects them from suit because their functions are quasi-judicial in nature. Defs.' Mem. at 17-18. Absolute immunity extends to judges for acts performed within their judicial discretion, *Pierson v. Ray*, 386 U.S. 547, 554 (1967), and to officials who perform functions closely associated with the judicial process, *Butz v. Economou*, 438 U.S. 478, 511-14 (1978). For example, a probation officer is absolutely immune from a suit arising from the preparation of a presentence investigation report because this task "is an integral part of the judicial function of sentencing." *Turner v. Barry*, 856 F.2d 1539, 1540 (D.C. Cir. 1988) (per curiam). In this circumstance, a probation officer "acts at the specific request of the court and submits the results of the investigation to the sentencing court for its evaluation," and in doing so "probation officers typically serve as an arm of the sentencing judge." *Id.* (citations and internal quotation marks omitted). Thus, the District of Columbia Circuit has held that "District of Columbia probation officers are absolutely immune from liability for damages in an action brought pursuant to 42 U.S.C. § 1983 for alleged errors in the

investigation and preparation of presentence reports." *Id.* at 1541; *Sykes v. James*, 13 F.3d 515, 521 (2d Cir. 1993) (concluding that a parole officer was immune from suit under § 1983 alleging that he submitted a false affidavit in a parole revocation hearing). Accordingly, when a parole officer performs a quasi-judicial function, he is protected by absolute immunity. *See, e.g., Keller v. Pa. Bd. of Prob. and Parole*, 240 Fed. Appx. 477, 480 (3d Cir. 2007) (per curiam) (affirming district court's holding that a parole board member who "interviewed [the plaintiff] for re-parole and took part in deciding whether [the plaintiff] should be granted re-parole in 2001 and 2002" took an action that was "adjudicatory in nature," entitling him to immunity from suit under § 1983); *Loggins v. Franklin County, Ohio*, 218 Fed. Appx. 466, 476 (6th Cir. 2007) (unpublished table decision) (finding that a probation officer who obtained information and included it in a Statement of Violations on which the judge's decision to issue an arrest warrant was based was protected by absolute immunity because "[a]ll of [her] actions were related to ensuring [that the plaintiff] was complying with the terms of his probation"); *Hunter v. Rodriguez*, 73 Fed. Appx. 768, 769 (5th Cir. 2003) (per curiam) (affirming the district court's conclusion that a supervising parole officer was entitled to absolute immunity because she was a "participant[] in the decision to revoke [the plaintiff's] parole"); *Anton v. Getty*, 78 F.3d 393, 396 (8th Cir. 1996) (concluding that parole officers who found the plaintiff's release plan unacceptable and who recommended delaying the plaintiff's parole release were performing "tasks . . . similar to the ones performed by probation officers when they prepare a presentence report," according them protection by absolute immunity).

In this case, however, the plaintiff alleges that these defendants acted improperly with respect to his parole supervision, the investigation of alleged violations of the conditions of his

parole release, and the preparation of reports on which the USPC relied in issuing a parole violation warrant and revoking his parole. It is not clear that these functions are adjudicatory in nature or otherwise are integral to a judicial process. Rather, these acts appear to be investigatory in nature, and therefore are analogous to a law enforcement function. *See, e.g., Dawson v. Newman*, 419 F.3d 656, 662 (7th Cir. 2005) (finding that parole officials "offer[ed] no precedent for the proposition that they should be entitled to absolute immunity for performing their day-to-day duties in the supervision of a parolee[,]" and concluding under the circumstances of the case that they were not protected by absolute judicial immunity); *Swift v. California*, 384 F.3d 1184, 1191 (9th Cir. 2004) (holding that California parole agents were not entitled to absolute immunity in regards to the investigation of the plaintiff's alleged parole violations, as this activity is akin to a law enforcement, not a judicial, function); *Scotto v. Almenas*, 143 F.3d 105, 110-13 (2d Cir. 1998) (finding that a New York State parole officer who recommended that a warrant be issued for a parole violation, but did not otherwise "prosecute" the parole revocation, was not entitled to absolute immunity); *Russ v. Uppah*, 972 F.2d 300, 303 (10th Cir. 1992) (finding that a probation or parole officer's decisions involving revocation of probation or parole are entitled to qualified, not absolute, immunity); *Wilson v. Rackmill*, 878 F.2d 772, 776 (3d Cir. 1989) (concluding that probation officers who investigated allegations of parole violations and prepared a warrant application performed executive and investigative functions, and therefore were not necessarily entitled to absolute immunity); *but see Moore v. Yakima Cty.*, 945 F.2d 409 (9th Cir. 1991) (unpublished table decision) (concluding that allegations by probationer that probation officer served him with a warrant without due process, threatened him, and overcharged him probation fees did not allege actions outside the scope of the probation officer's

13

official duties, and accordingly, probation officer was protected by absolute immunity). It appears, then, that these defendants are not protected by absolute immunity.

In the alternative, the defendants argue that they are entitled to qualified immunity, which shields government officials from suit when performing certain discretionary functions. *See* Defs.' Mem. at 18-20. "Generally, when a plaintiff sues a government agent in his individual capacity and the government agent raises a qualified immunity defense, the plaintiff must overcome the qualified immunity defense in order to survive a Rule 12(b)(6) motion to dismiss." *Ennis v. Lott*, 589 F. Supp. 2d 33, 36-37 (D.D.C. 2008).

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is designed to shield public officials "from undue interference with their duties and from potentially disabling threats of liability," *id*. at 806, and is designed to dispose of "insubstantial lawsuits" on a motion to dismiss before the point at which the defendant is required to engage in substantial litigation, *id.* at 808. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an *immunity from suit* rather than a mere defense to liability; and . . . is effectively lost if a case is erroneously permitted to go to trial." *Id.* Accordingly, the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam) (emphasis in original).

By definition, qualified immunity is not absolute. Rather, it "is applicable unless the

official's conduct violated a clearly established constitutional right." *Pearson v. Callahan*, __ U.S. __, __, 129 S. Ct. 808, 816 (2009).  However, "[a] plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue." *Davis v. Scherer*, 468 U.S. 183, 197 (1984).

Commenting on directions provided by the Supreme Court, the District of Columbia Circuit noted that

> [i]n *Saucier v. Katz*, 533 U.S. 194[, 201] (2001), the Supreme Court enunciated a two-step analysis for determining whether qualified immunity applies.  First, the court must determine whether the [plaintiff] alleges violations of constitutional rights.  If constitutional violations are alleged, the court must next determine whether the right allegedly violated is clearly established.

*Arrington v. United States*, 473 F.3d 329, 339 (D.C. Cir. 2006) (internal citations omitted). "[T]he *Saucier* procedure should not be regarded as an inflexible requirement," however, *Pearson*, 129 S.Ct. at 813, and its sequence no longer is mandatory, *id.* at 818.  This Court in its discretion therefore may address either of the two steps first "in light of the circumstances of the particular case at hand."  *Id.*  The Court opts to consider first "this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendants'] conduct violated a constitutional right?"  *Saucier*, 533 U.S. at 201.

Notwithstanding the plaintiff's reference to the First Amendment, *see* Compl. at 3, racial prejudice, *id.* ¶¶ 8, 11, and vague assertions of the defendants' abuse of authority, *id.*, he articulates no particular constitutional violation or theory of his case.  Absent from his complaint are specific factual allegations showing that the defendants have committed a constitutional

15

violation. Moreover, the plaintiff's opposition to the defendants' motion offers no argument, discussion, or explanation that challenges the defendants' assertion that they properly supervised the plaintiff's parole. In response to the defendants' motion for summary judgment, the plaintiff appears to rest his case solely on the allegations of his complaint, and utterly fails to allege any specific facts showing that a genuine issue exists for trial with respect to his constitutional claims.

      Local Civil Rule 7(b) of this Court provides:

> Within 14 days of the date of service or at such other time as the court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion. <u>If such a memorandum is not filed within the prescribed time, the court may treat the motion as conceded</u>.

LCvR 7(b) (emphasis added); *see FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997) (treating the plaintiff's summary judgment motion as conceded because the defendant filed its opposition late). Similarly, "when a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the entire case." *Fox v. Am. Airlines, Inc.*, No. 02-2069, 2003 WL 21854800, at *2 (D.D.C. Aug. 5, 2003) (citations omitted); *Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (citing *Bender*, 127 F.3d at 67-68); *Stephenson v. Cox*, 223 F. Supp. 2d 119, 121 (D.D.C. 2002). In this case, both the deficiencies in his pleading and the plaintiff's failure to oppose the defendants' arguments regarding the constitutional claims against CSOs Brennan, Taberski and Hinton in their individual capacities leave the Court no choice but to grant the defendants' motion as conceded. *See, e.g., Slaby v. Fairbridge*, 3 F. Supp. 2d 22, 30 (D.D.C. 1998) (dismissing the *pro se* plaintiff's sex discrimination claim where she submitted only vague

16

allegations of discrimination and "cited no constitutional or statutory law to support her claims").

### 3. Quander Is Not Liable For the Actions of Brennan, Taberski or Hinton

It appears that the plaintiff purports to hold former CSOSA Director Paul Quander responsible for constitutional violations committed by his subordinates, CSOs Brennan, Taberski and Hinton. In order to hold Quander liable for the actions of his subordinates, the plaintiff must plead that he, "through [his] own individual actions, has violated the Constitution." *Iqbal*, 129 S.Ct. at 1948; *Monell v. Dep't of Soc. Servs. of the City of New York.*, 436 U.S. 658, 690-94 (1978); *Cameron v. Thornburgh*, 983 F.2d 253, 258 (D.C. Cir. 1993). However, the plaintiff does not allege that Quander personally participated in any of the events alleged in the complaint. Rather, the only legal basis that could be advanced by the plaintiff for holding Quander liable would be based on his responsibility for supervising the CSOSA staff. Because "vicarious liability is inapplicable to *Bivens* . . . suits," *Iqbal*, 129 S.Ct. at 1948, the plaintiff's constitutional claims against Quander in his individual capacity must fail.

### 4. The Complaint Fails to State a Conspiracy Claim Under 42 U.S.C. § 1985

There is a cause of action against two or more persons who participate in a conspiracy motivated by class-based discriminatory animus. 42 U.S.C. § 1985(3); *see also Griffin v. Breckenridge*, 403 U.S. 88, 96-102 (1971) (examining the meaning of § 1985(3)). "Among other things, [a] section 1985 plaintiff[] must allege the elements of civil conspiracy, including: 'an agreement to take part in an unlawful action or a lawful action in an unlawful manner.'" *Barr v. Clinton*, 370 F.3d 1196, 1200 (D.C. Cir. 2004) (quoting *Hall v. Clinton*, 285 F.3d 74, 83 (D.C. Cir. 2002)).

The plaintiff's complaint merely references § 1985(3) with a partial quotation, *see* Compl. at 4, and surmises that he may be the victim of "racial prejudice." *See id.* ¶¶ 8, 11. These assertions, wholly lacking in factual allegations to support them, neither manage to plead the elements of a civil conspiracy nor adequately allege a class-based animus. Accordingly, the Court dismisses plaintiff's § 1985(3) claim as insufficiently pled. *See, e.g., Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997) (dismissing a *pro se* litigant's Section 1985 claim for his failure to "allege that there was ever an agreement or 'meeting of the minds'").

5. <u>The Plaintiff's Demand for Compensation for Time Spent In Custody is Barred</u>.

The plaintiff appears to demand monetary damages as compensation for the time he was in custody pending his parole revocation hearing in 2005. *See* Compl. ¶ 13. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ for habeas corpus.

*Id.* at 486-87; *see also Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *accord White v. Bowie*, 194 F.3d 175 (D.C. Cir. 1999) (unpublished table decision). Thus, absent a showing that the plaintiff's conviction or sentence has been invalidated, or in this case, that his parole violation has been invalidated, which is lacking here, the plaintiff cannot recover damages for the period of detention in question.

## III. CONCLUSION

Because the plaintiff's complaint fails to state claims upon which relief can be granted, the Court will grant the defendants' motion to dismiss or, in the alternative, for summary judgment. An Order is issued separately.

/s/
REGGIE B. WALTON
United States District Judge

DATE: March 30, 2010